UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TYJUAN J. DIXON,

        Plaintiff,

   v.                                     CAUSE NO. 3:22-CV-941-DRL-MGG

RON NEAL *et al.*,

        Defendants.

## OPINION AND ORDER

TyJuan J. Dixon, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Dixon alleges he has been denied adequate medical care at the Indiana State Prison. Specifically, he alleges he has experienced "ear pain and fluid drainage, dizziness, pain in my eyes, also straining in my eyes, cool and hot sensation in my head, pain in my head, chest pain, and pain in my throat" over the last year and nine months. ECF 1 at 3. He claims he has submitted healthcare requests regarding these issues, but the problems were not resolved. On July 11, 2022, Nurse Practitioner Diane Thews ordered a liver function blood test. When Mr. Dixon received a copy of those results on July 28, 2022, he

became aware they were abnormal. Because he had not yet discussed the results with a healthcare provider or received care related to them, he filed a grievance. On August 23, 2022, he received a response from Joshua Wallen, the grievance specialist:

> I spoke with RN Fritter. She states per Dr. Marthakis, you had been seen on 6-27-22 and went over the abnormal results indicated in your test from 6-6-22. She notes the 7-11-22 test came back normal. She notes you were also instructed to discontinue the NSAID provided to you. You will be scheduled for a Provider follow-up per RN Fritter. Grievance denied.

ECF 1-1 at 3. Mr. Dixon claims the statements made by Registered Nurse Sherri Fritter and Dr. Nancy Marthakis related to the "normal" results were false. Mr. Dixon then requested all of his medical records, and he learned he had an abnormal blood test result from the prior year on June 14, 2021, for which he was not treated (or even told occurred).

Mr. Dixon has attached blood tests results which show: (1) slightly elevated bilirubin, SGOT/AST, and SGPT/ALT levels from July 11, 2022; (2) elevated SGOT/AST and SGPT/ALT levels plus a slightly elevated CBC platelet count from June 6, 2022; and (3) a slightly low FT4 level with a within-range TSH level on June 14, 2021. *See* ECF 1-1 at 4–6. He has sued Warden Ron Neal, Dr. Marthakis, NP Thews, RN Fritter, and Grievance Specialist Wallen for monetary damages and for injunctive relief to be "seen by a specialist as soon as possible at a real hospital." ECF 1 at 5.

Inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability for claims of inadequate medical care under the Eighth Amendment, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511

2

U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, "conduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Additionally, inmates are "not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id*. In effect, the Eighth Amendment "protects prisoners from . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (citation omitted).

Here, Mr. Dixon alleges he has a variety of symptoms[1] that have not been adequately addressed. He claims he has submitted heathcare requests for the past year and nine months, but the matter has not been resolved. However, the complaint does not

---

[1] He states he has "ear pain and fluid drainage, dizziness, pain in my eyes, also straining in my eyes, cool and hot sensation in my head, pain in my head, chest pain, and pain in my throat." ECF 1 at 3.

3

provide sufficient facts, dates, and specifics about these longstanding requests and the medical treatment he has received over that period.

A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

Importantly, based on the information Mr. Dixon does provide, it is not plausible to infer he is not receiving constitutionally adequate medical care. The only detailed allegations in the complaint pertain to blood tests that the medical professionals *did* order. Specifically, based on the records attached to the complaint, it is clear Mr. Dixon received

4

at least three separate rounds of blood tests in a little over a year.[2] When the recent June 6, 2022, tests revealed "abnormal" results, he was re-tested about a month later. Although Mr. Dixon alleges the statements attributed to Dr. Marthakis and RN Fritter in the grievance response regarding the "normal" results from July 11, 2022, are false, he does not dispute that he was seen by medical after the first round of testing on June 6, that he received additional liver-specific testing thereafter, and that he was subsequently advised to discontinue using the NSAID that had been provided to him. Accordingly, it cannot be inferred that he is failing to receive constitutionally adequate care simply because he hasn't been seen by an outside specialist or given a specific diagnosis based on those blood test results. *See e.g. Gabb*, 945 F.3d at 1032-33 (The Eighth Amendment does not mandate "unqualified access to healthcare" or prevent malpractice, but instead it "protects prisoners from . . . grossly inadequate medical care.").

Of note, liver function tests—which include bilirubin, SGOT/AST, and SGPT/ALT levels—can be used to:

- Screen for liver infections, such as hepatitis

---

[2] He mentions a test from June 2021, that revealed a slightly low FT4 level. These types of tests are typically performed to check thyroid function. *See e.g.* https://www.uclahealth.org/medical-services/surgery/endocrine-surgery/conditions-treated/thyroid/normal-thyroid-hormone-levels (last visited Dec. 20, 2022). Low T4 in combination with an elevated level of TSH can sometimes indicate hypothyroidism, but "[f]or mild cases of hypothyroidism, not all patients need treatment. Occasionally, the condition may resolve without treatment. Follow-up appointments are important to monitor hypothyroidism over time, however." *See* https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-mild-hypothyroidism-may-not-need-treatment/ (last visited Dec. 20, 2022). Here, the attached records reveal Mr. Dixon's FT4 level was slightly low, but his TSH level was within the normal range. In any event, Mr. Dixon does not provide any details regarding the specific care he requested or received before, during, or after those test results. Without additional details, the failure of the medical staff to disclose a slightly abnormal test result to him from over a year ago does not state a valid claim.

- Monitor the progression of a disease, such as viral or alcoholic hepatitis, and determine how well a treatment is working
- Measure the severity of a disease, particularly scarring of the liver (cirrhosis)
- Monitor possible side effects of medications

*See* https://www.mayoclinic.org/tests-procedures/liver-function-tests/about/pac-20394595 (last visited Dec. 20, 2022). According to the Mayo Clinic, "[a]bnormal liver function test results don't always indicate liver disease." *Id*. Symptoms of liver disease include:

- Skin and eyes that appear yellowish (jaundice)
- Abdominal pain and swelling
- Swelling in the legs and ankles
- Itchy skin
- Dark urine color
- Pale stool color
- Chronic fatigue
- Nausea or vomiting
- Loss of appetite
- Tendency to bruise easily

*See* https://www.mayoclinic.org/diseases-conditions/liver-problems/symptoms-causes/syc-20374502 (last visited Dec. 20, 2022). Mr. Dixon is focused on the "abnormal" results from the liver-specific blood tests that were performed, but it isn't plausible to infer his alleged current symptoms—ear pain and fluid drainage, dizziness, eye pain and strain, cool and hot sensations along with pain in his head, chest pain, and throat pain—are related to those results. Not all blood test results outside of the normal range require treatment when considered along with the patient's entire health record. *See, e.g.*, https://www.health.harvard.edu/blog/blood-test-results-not-quite-normal-201606029718 (last visited Dec. 20, 2022) ("Blood test results can vary a little bit,

6

depending on the lab. And many people are consistently on one side or the other of the normal range, and for them, that's healthy."). Here, because Mr. Dixon doesn't provide any other details about the requests he made or the care he received over the past year and nine months for the specific symptoms he *is* experiencing, he hasn't plausibly alleged he is being denied constitutionally adequate medical care under the Eighth Amendment.

Accordingly, this complaint does not state a claim for which relief can be granted. If he believes he can state a claim based on (and consistent with) the events described in this complaint, Mr. Dixon may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

Mr. Dixon has also filed a motion for preliminary injunction. In it, he points to the "abnormal" results of the July 11, 2022, blood test and claims "[t]he medical staff have yet to render medical attention by transporting the affiant to a hospital to see a specialist with the proper equipment to diagnose the affiant." ECF 4 at 4. He attaches the same blood test results as he did to his complaint.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792. On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions—those requiring an affirmative act by the defendant [such as transferring an inmate to a different facility]—are ordinarily cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (internal quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief

8

"must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

Mr. Dixon has not alleged any plausible claims. As such, he has no chance of success on the merits of the allegations described in his motion. *See Winter*, 555 U.S. at 20 (a plaintiff must establish he is likely to succeed on the merits to receive preliminary injunctive relief); *Univ. of S. Ind.*, 43 F.4th at 791 (when addressing a motion for a preliminary injunction, the court need not accept the allegations as true or give the plaintiff the benefit of all reasonable inferences). Therefore, the motion will be denied.

For these reasons, the court:

(1) DENIES the motion for preliminary injunction (ECF 4);

(2) GRANTS TyJuan J. Dixon until **January 23, 2023**, to file an amended complaint; and

(3) CAUTIONS TyJuan J. Dixon if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

December 22, 2022                                *s/ Damon R. Leichty*
                                                  Judge, United States District Court